UNITED STATES of America,
Plaintiff-Appellant,

v.

Belony SAINTIL and Kersazan Tacius,
Defendants-Appellees.

No. 82–5987.

United States Court of Appeals,
Eleventh Circuit.

May 16, 1983.

Stanley Marcus, U.S. Atty., Richard Kamps, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Thomas Almon, Hugh J. Behan, Miami, Fla., for defendants-appellees.

Before FAY and CLARK, Circuit Judges, and MARKEY [*], Chief Judge.

PER CURIAM:

The Speedy Trial Act, 18 U.S.C.A. sections 3161–3174 (West Supp.1983), provides that a defendant must be brought to trial within seventy days from the indictment's publication or from the defendant's first appearance before a judicial officer of the court in which the charge is pending, whichever event occurs last. However, 18 U.S.C.A. sec. 3161(h) (West Supp.1983) provides that certain periods of delay are to be excluded from computation of the time period. Among the subparagraphs of paragraph (h), there is the specific provision that "[a]ny period of delay resulting from ... any interlocutory appeal" shall be excluded. 18 U.S.C.A. sec. 3161(h)(1)(E) (West Supp. 1983). In the present case, the district court concluded that the five months consumed by the government's interlocutory appeal of one of the district court's orders was not excludable time under section 3161(h)(1)(E). We reverse.

On October 22, 1981, in a six-count indictment, appellee Belony Saintil, along with Kersazan Tacius, was charged with conspiracy to bring 200 unauthorized aliens into the United States in violation of 18 U.S.C. sec. 371 and with substantive counts of bringing in such aliens in violation of 8 U.S.C. sec. 1324(a)(1). On November 6, 1981, the defendants moved to strike from the indictment references to atrocities allegedly committed by appellee and Tacius against the unauthorized aliens whom the two allegedly transported. On December 3, 1981, the district court granted the defendants' motion stating in part:

> The actions which the Government wants to prove simply do not comprise the material elements of the alleged conspiracy, and their non-proof would not negate the presence of a conspiracy. Their presentation in the trial of this case would only inflame and prejudice a jury....

Trial had been set to begin December 7, 1981; however, following the district court's denial of the motion to reconsider, the government requested a stay so that it could obtain permission to appeal. On December 4, 1981, the district court granted the stay.

Nineteen days later, on December 23, 1981, the government filed a notice of ap-

---

* Honorable Howard T. Markey, Chief Judge for the Federal Circuit, sitting by designation.

peal to this court from the district court's order to strike. The case was designated as an expedited appeal and oral argument was set for April 5, 1982. During this time, the appellee remained in jail without bail. The government then filed a brief alleging that the issue to be decided by this court was "whether evidence pertaining to overt acts two through five was relevant and admissible at trial." The argument was based upon what the government claimed was an "oral ruling" suppressing evidence at an unreported calendar call on December 3, 1981. On March 5, 1982, the government, in a motion for clarification, reapplied to the district court seeking a written order setting forth the district court's purported "oral ruling" of the calendar call of December 3, 1981. On March 23, 1982, the district court, however, denied the motion for clarification stating that the court had not made any anticipatory ruling concerning the admissibility of evidence on December 3, 1981, and, further, that the court declined to do so.

On March 31, 1982, four days before scheduled oral argument, the government moved to voluntarily dismiss its appeal. On April 30, 1982, pursuant to the dismissal, the case was remanded to the trial court, the case's posture being the same as it had been on December 3, 1981. Thus, five months passed between the order staying the trial for interlocutory appeal and the remand following the government's motion to voluntarily dismiss.

On May 6, 1982, the appellee filed a motion to dismiss based upon the denial of his speedy trial rights under the Speedy Trial Act and the sixth amendment as a result of the delay caused by the government's attempted appeal.

On July 6, 1982, the district court, adopting a magistrate's report on the matter, dismissed the case for violation of the Speedy Trial Act. On August 24, 1982, following a subsequent motion for clarification filed by the government, the court entered an order stating that the dismissal was with prejudice. Still, the appellees remained incarcerated without bail because the government then moved for a stay of release pending a decision to appeal. Some 28 days later, the government filed its appeal of the order dismissing the indictment. Subsequently, the trial court ordered the appellees released from the custody of the United States Marshal and turned over to Immigration authorities for resettlement in an Immigration refugee camp.

■ The provisions of the Speedy Trial Act upon which we focus our attention state:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

.     .     .     .     .

(E) delay resulting from any interlocutory appeal

.     .     .     .     .

18 U.S.C.A. sec. 3161(h)(1)(E) (West Supp. 1983). In these provisions, the phrase "the following periods of delay shall be excluded ...," as well as the word "any," "indicates that each period listed in Section 3161(h) automatically is a period of delay." *United States v. Stafford,* 697 F.2d 1368, 1371 (11th Cir.1983).

A contrary reading would present difficult practical questions of whether time consumed by an interlocutory appeal should or should not be excluded under the Act. As the court in *Stafford* noted, the Act's legislative history supports our conclusion. 697 F.2d at 1371, citing S.Rep. No. 96–212, 96th Cong. 1st Sess. 33 (1979) (the Act provides for "automatic application of exclusions").

■ Appellee based his motion to dismiss upon not only rights claimed under the Speedy Trial Act, but also upon sixth amendment rights. Although no provision of the Speedy Trial Act was intended to bar any sixth amendment speedy trial claim, 18

U.S.C.A. sec. 3173 (West Supp.1983), "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to a speedy trial has been violated." *United States v. Nance,* 666 F.2d 353, 361 (9th Cir.1981).

■ To determine whether Saintil had the speedy trial required by the sixth amendment, we use a balancing test described in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), requiring that we consider at least these four factors: the length of time that defendant waited for trial, the validity of the government's reasons for delay, the timeliness and strength of the defendant's assertion of his right, and the prejudice accruing to the defendant from the delay. *See United States v. Herman,* 576 F.2d 1139, 1145 (5th Cir.1978).

Although trial was delayed for nearly a year, the delay attributable to the government's voluntarily dismissed interlocutory appeal was five months. In contrast, the delay triggering the court's decision to employ the balancing test in *United States v. Herman* was fifteen months. (The court in *United States v. Herman,* having applied all four factors of the test, concluded that no sixth amendment right was violated.) Thus, in the present case, the relative shortness of the delay must be kept in view.

As to the reasons for the delay, we note that the Supreme Court said in *Barker v. Wingo:*

Closely related to the length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.

407 U.S. at 531, 92 S.Ct. at 2193, 33 L.Ed.2d at 117. The magistrate whose report and recommendation was adopted by the district court did not find that the government had deliberately attempted to delay the trial. The magistrate wrote:

In this case, the government insists that it in good faith believed that it was appealing from a ruling suppressing evidence. Regardless of the good faith or lack thereof, the record clearly establishes that Judge King entered an Order on December 3, 1981, which simply struck certain passages from the indictment as surplusage. The Order in no way suppressed any evidence. It is inconceivable that the government could be so negligent as to proceed with an appeal upon a mistaken view of the contents of the Court Order, when the Order was filed in writing, and quite express in its terms. Any clarification of that Order should have been sought at that time, not after the defendants had spent over three months in jail.

The magistrate thus apparently ascribed the government's interlocutory appeal to negligence, rather than to bad faith. The government's mistake, although quite serious, is a "more neutral reason" for delay than a deliberate intent to delay, and it should be weighted less heavily.

Although appellee did press his speedy trial claim soon after the government's motion to voluntarily dismiss—thus meeting the third requirement of the *Barker v. Wingo* test—there is doubt as to whether the fourth factor, prejudice, was met to any degree. In *Barker v. Wingo,* the Supreme Court recognized three types of prejudice that may result from delay: pretrial incarceration, anxiety and impairment of the defense. 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d 118. Appellee could have himself avoided all three types of prejudice, in view of *United States v. Hitchmon,* 602 F.2d 689 (5th Cir.1979). In *Hitchmon,* the court stated:

... Filing a notice of appeal from a nonappealable order should not divest the district court of jurisdiction ... The contrary rule leaves the court powerless to prevent intentional dilatory tactics,

forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process.

602 F.2d at 694. Thus, appellee Saintil had a "right to continuing trial court jurisdiction." The district court could have considered the frivolousness of the government's appeal and proceeded with the trial.

In conclusion, we are faced with a delay of five months caused by the government's interlocutory appeal. The government was mistaken in seeking that appeal. When it realized the mistake, the government moved for voluntary dismissal. Balancing all the relevant factors, we conclude that the delay attributed to the government's interlocutory appeal did not deny Saintil the right to a speedy trial that the sixth amendment guarantees him. The Speedy Trial Act excludes the time resulting from an interlocutory appeal. We will not adopt a rule that would permit an examination of the government's care in prosecuting its every interlocutory appeal. We do expect integrity and good faith. We hope for perfection, but we recognize the reality of fallibility.

The judgment of dismissal is REVERSED and the case is REMANDED for trial.