[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2006
THOMAS K. KAHN
CLERK

No. 05-15497
Non-Argument Calendar

_____

D. C. Docket No. 05-00009-CR-1-JTC-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY JAMES, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 28, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Tony James, Jr., appeals his conviction for interstate travel to facilitate the

distribution of cocaine base, in violation of 18 U.S.C. § 1952(a)(3). On appeal, James argues that a delay of ten years by the government in bringing him to trial is a per se violation of his Sixth Amendment right to a speedy trial. He further contends that the government prejudiced his case because it was negligent in not arresting him sooner, which led to evidence being destroyed. We conclude that James's right to a speedy trial was not violated and AFFIRM the judgment of the district court.

## I. BACKGROUND

Beginning in 1990, as a result of a Georgia conviction for possession of a controlled substance, James was placed on probation through 2000. Because of a failure to satisfy the conditions of his probation, beginning in late 1992 through March 1993, James's probation officer submitted a report on Daniel's delinquency. A judge then issued an arrest warrant for James on 25 March 1993.

In the meantime, on 3 March 1993, a federal indictment for several counts, including one count of interstate travel to facilitate the distribution of cocaine base, in violation of 18 U.S.C. § 1952(a)(3), was returned, and an arrest warrant was issued the next day. Law enforcement officers went to the home of Carolyn Holmes, James's companion, in Warm Springs, Georgia, where they discovered that he had left for Florida. Several law enforcement authorities from different

agencies in the Miami-Dade area, where James's mother was known to be living, searched for him. Further, the Manchester Star-Mercury, which is the local newspaper for Warm Springs, Georgia, published a front-page article on 9 March 1993, regarding the indictments related to the instant case, naming "Tony James, Jr." as one of the defendants charged in the drug investigation.

Federal Bureau of Investigation (FBI) agents, in trying to apprehend James: (1) entered him into the National Crime Information Center (NCIC) system as a wanted fugitive; (2) submitted James's FBI identification number to the NCIC system; and (3) developed an address for James in Miami. Additionally, the FBI relied on various techniques to apprehend James, including: (1) receiving information from informants; (2) seeking assistance from other law enforcement offices; (3) attempting to obtain a photograph of James; (4) retrieving long distance telephone records; (5) conducting several "drive-bys" past a location associated with James; (6) requesting that the FBI-Miami surveillance office attempt to locate James and other fugitives; (7) alerting informants to be on the lookout for James; (8) making periodic visits to Holmes's residence in Georgia to determine if James was there; (9) going to James's residence in December 1993, and, after the woman there told the agent that James was not there, advising her that there was a warrant out for James's arrest; and (10) updating, by name and assigned FBI identification

number, James's fugitive status in 1998, 1999, 2000, 2002, 2003.

James contacted his attorney in 1995 to inquire about the possibility of surrendering. In 1998, he obtained a Florida Learner's License, in the name of "Mingo Armstrong," and, in 2003, used that name to gain employment with a convenience store in Miami. James also had several encounters with law enforcement officers during that time-period, under different names. In 1994, he was detained at Hobby Airport in Houston, Texas, under the name "Steven Xuman Dubose," because cocaine was found in his luggage, resulting in an arrest. A bench warrant for his arrest was issued in December 1995 for failure to appear at a hearing relating to a traffic offense. In October 2000, he was subject to a routine traffic stop, during which he was arrested after narcotics and firearms were discovered. At that time, his fingerprints, under the name of "Mingo Armstrong," were submitted to the NCIC.

In 2003, James became the subject of another drug investigation, with a confidential informant (CI) indicating that James was known to him/her as "Mingo Brown," "Mingo Browning," and "Tony." The CI further provided an address, which led to the determination that "Tony James" was associated with the address. This resulted in the eventual arrest of James for drug trafficking in December 2003 in Miami, Florida. In his possession at the time of his arrest were a driver's license,

4

in the name "Mingo Armstrong," and a cell phone subscribed to the name "Carrington Howard."

James pled not guilty to the federal indictment in January 2004. He then filed a motion to dismiss the indictment for failure to grant a speedy trial, arguing that the government had not exercised due diligence in bring him to trial, and he had been prejudiced because evidence had been destroyed and witnesses no longer were available.

After concluding the facts in relation to James's speedy trial claim, the magistrate judge made several findings, using the analysis set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972). He determined that, although the ten-year delay in bringing James to trial created a presumption of prejudice to James's right to a speedy trial, that right had not been violated. The magistrate judge reasoned that, although the government could have done things differently while trying to apprehend James: (1) its negligence did not rise to the level of "inexcusable" negligence; (2) it made efforts to capture James following the 1993 indictment; and (3) it followed up on those efforts periodically. Further, the magistrate judge found that James had to bear most of the burden for the delay because he (1) left Georgia shortly after he was indicted, (2) moved around, (3) obtained two known aliases, (4) obtained identification cards reflecting his aliases,

5

and (5) remained a fugitive unrelated to the current indictment against him. The magistrate judge noted that, unrelated to the federal charges against him, James was violating the conditions of his state probation, which had been in place since 1990. His evasion was found to be evidenced by the facts that: (1) he knew that he was wanted by Georgia and Florida authorities; and (2) newspaper articles specifically named him as among those charged in drug crimes. The magistrate judge determined that the assertion of the right to a speedy trial was a neutral factor and that, since the other Barker factors, namely, the length and the reason for the delay, were not weighed heavily against the government, James had to show actual prejudice. The magistrate judge then concluded that James could not demonstrate actual prejudice, because he did not suffer pre-trial incarceration, as he was not in custody until 2003, his case had been moving steadily forward since his arrest, and the destruction of evidence could be as damaging to the government as to him.

Neither party filed objections to the magistrate judge's report and recommendation, and the district court adopted it. James eventually entered a conditional guilty plea in case and reserved the right to appeal the denial of his pre-trial motions in the original case.

## II. DISCUSSION

We review de novo a district court's denial of a defendant's motion to

6

dismiss the indictment based upon the Sixth Amendment right to a speedy trial. United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999). "We review the district court's factual findings for clear error." United States v. Schlei, 122 F.3d 944, 986 (11th Cir. 1997).

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. Applying Barker, we have recognized four factors to determine whether a defendant has been deprived of his constitutional right to a speedy trial: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." Register, 182 F.3d at 827; see also Barker, 407 U.S. at 530-32, 92 S. Ct. at 2192-93. Further, "[t]hese factors must be considered together--no single factor is sufficient to find a deprivation of the defendant's Sixth Amendment right." Schlei,122 F.3d at 987. We review the district court's determination of who is responsible for the delay with "considerable deference." See United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996) (per curiam). "[A] defendant generally must show actual prejudice unless the first three factors in Barker all weigh heavily against the government."

7

United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991).

A delay of one year is considered presumptively prejudicial. See Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1. The Supreme Court has noted that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." Id. at 655-56, 112 S. Ct. at 2693 (citation omitted). The Supreme Court has recognized, however, that "delay is a two-edged sword [as] [i]t is the [g]overnment that bears the burden of proving its case beyond a reasonable doubt[, and] [t]he passage of time may make it difficult or impossible for the [g]overnment to carry this burden." United States v. Loud Hawk, 474 U.S. 302, 315, 106 S. Ct. 648, 656 (1986) (citations omitted).

We do not believe that any particular amount of time creates a per se violation of the Speedy Trial Clause. This argument is contrary both to our precedent in Schlei,122 F.3d at 987, which states that "no single factor is sufficient to find a deprivation of the defendant's Sixth Amendment right," and the Supreme Court's precedent in Doggett, 505 U.S. at 655-656, 112 S. Ct. at 2693, which states that "presumptive prejudice cannot alone carry a Sixth Amendment claim without

regard to the other Barker criteria." This argument, therefore, is without merit.

As to the four factors set out in Barker, here, both parties agree that: (1) ten years created a presumption of prejudice; and (2) the factor of the assertion of the right to a speedy trial is "neutral." Therefore, the reason for the delay must be analyzed, and James will have to show that he suffered actual prejudice, since the first three factors do not weigh against the government. See Davenport, 935 F.2d at 1239.

Here, the district court found that, while the government could have done more to apprehend James, it was primarily James's fault that he was not brought to trial sooner. Specifically, it found that, because James knowingly violated his probation, used aliases, had state identifications issued to support those aliases, and was aware that the authorities were looking for him, he shouldered the majority of the responsibility for the delay in his capture. Unlike the defendant in Clark, 83 F.3d at 1352, who "[d]uring the entire duration of the delay, []continuously resided in the same apartment listed on the arrest warrant and attended classes at the same local university as he had prior to his alleged illegal activities. . . [and never] attempted to elude the authorities in any way," James had aliases, which he consistently used, with supporting government identification. In fact, his fraudulent Florida identification was found on him when he was arrested in 2003,

9

and he also used it to obtain employment. Moreover, through his own action in violating his probation, he knew that the Georgia authorities were looking for him. Further, the police went on several visits to the home of his companion, Holmes, looking for him over the years, and his name appeared in a front-page news article, naming him among those charged in an illegal conspiracy. Accordingly, even apart from his own actions, he had notice that the authorities were looking for him, yet he continued to evade them.

The government continued to update James's name in the NCIC system and continued to question those known to have a relationship with him, unlike the agents in Doggett, who "made no serious effort to test their progressively more questionable assumption that [the defendant] was living abroad, and, had they done so, they could have found him within minutes." 505 U.S. at 652-653, 112 S. Ct. at 2691. The district court, therefore, did not err in determining that the delay was predominately the fault of James.

Finally, as to actual prejudice, James is correct that the destruction of the audiotapes and the drugs is prejudicial to his case. However, as it is the government who has the burden of proving that the items confiscated were narcotics, and that James was the one who dealt the drugs, the prejudice cuts against the government. A explained in Loud Hawk, "[t]he passage of time may

make it difficult or impossible for the [g]overnment to carry this burden." Loud Hawk, 474 U.S. at 315, 106 S. Ct. at 656.

### III.  CONCLUSION

Because James could not demonstrate that the government's negligence in failing to capture him, during the ten-year period when he was fugitive, rose to an inexcusable level or that he suffered actual prejudice from the delay of his trial, his conviction is affirmed.  **AFFIRMED.**