EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>　　Recurrido<br><br>　　　　　v.<br><br>Eduardo Carrión Rivera<br><br>　　Peticionario | Certiorari<br><br>2003 TSPR 98<br><br>159 DPR _____ |

Número del Caso: CC-2002-588


Fecha: 4 de junio de 2003


Tribunal de Circuito de Apelaciones:
　　　　　　　　　　Circuito Regional II

Panel integrado por su Presidente, Juez Arbona Lago y los Jueces Urgell Cuebas y Aponte Hernández


Abogado de la Parte Peticionaria:
　　　　　　　　　　Lcdo. Rafael A. Rivera Rivera

Oficina del Procurador General:
　　　　　　　　　　Lcdo. Jaime Mercado Almodóvar
　　　　　　　　　　Procurador General Auxiliar

Materia: Art. 99(a) Código Penal




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                    CC-2002-588     Certiorari

Eduardo Carrión Rivera

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 4 de junio de 2003.

Nos corresponde resolver si el derecho constitucional a juicio rápido se extiende al período que transcurre entre la primera desestimación de una denuncia y la nueva presentación de cargos por los mismos hechos al amparo de la Regla 67 de Procedimiento Criminal.

Por entender que durante la referida etapa el acusado no se encuentra sujeto a responder ("held to answer"), resolvemos en la negativa.

I

El 8 de agosto de 2000 se presentó una denuncia contra el Sr. Eduardo Carrión Rivera (en adelante, "el peticionario" o "Sr. Carrión

Rivera") por infracción al Artículo 99(a) del Código Penal, 33 L.P.R.A. § 4061(a), imputándosele haber tenido relaciones sexuales con una niña de doce (12) años de edad. Ese mismo día se encontró causa probable para su arresto y se le impuso una fianza de cinco mil dólares ($5,000), la cual prestó en el acto.

La vista preliminar se señaló para el 14 de septiembre de 2000, fecha en la que el Ministerio Público compareció con la prueba de cargo. No obstante, a solicitud de la defensa, la misma fue pospuesta para el 25 de octubre de 2000. Llegado ese día, el Ministerio Público solicitó al Tribunal de Primera Instancia (en adelante, "TPI") que la transfiriera para otra fecha, ya que necesitaba corroborar cierta evidencia médica.[1] El TPI concedió dicho pedido y señaló la vista para el 14 de diciembre de 2000.

Sin embargo, ésta tampoco pudo celebrarse en dicha ocasión, ya que el representante del Ministerio Público alegó encontrarse enfermo. El TPI procedió a re-pautar la vista para el 26 de diciembre de 2000, pero ésta fue cancelada nuevamente. A consecuencia de ello, el mismo Ministerio Público solicitó la desestimación de la denuncia al amparo de la Regla 64(n)(5) de Procedimiento

---

[1] Se trataba de un informe sobre el examen médico que se le realizó a la niña que alegadamente fue violada, copia del cual fue entregado al peticionario en la Unidad Especializada de Delitos Sexuales de Bayamón. *Véase* Apéndice, a la pág. 32.

Criminal, 34 L.P.R.A. Ap. II, R.64(n)(5),[2] emitiendo el TPI una Resolución a esos efectos. No se dispuso nada más en dicha ocasión.[3]

En atención a ello, el 3 de abril de 2001, el TPI declaró con lugar una solicitud del peticionario para que se ordenase a la Policía de Puerto Rico a devolverle todo documento, foto y récord de huellas digitales tomadas en conexión con el caso desestimado.[4] El 10 de agosto de 2001, se le devolvió la fianza, según solicitado.[5]

Luego de varios meses, el 18 de diciembre de 2001, el Ministerio Público sometió por segunda vez el caso, presentando denuncia contra el peticionario por los mismos hechos que se le habían imputado el 8 de septiembre de 2000. Se determinó nuevamente causa probable para el arresto y se fijó una fianza de mil dólares ($1,000), la cual prestó en el acto. La vista preliminar se pautó originalmente para el 2 de enero de 2002, pero luego fue re-señalada para el 24 de enero de ese año.

Así las cosas, el 28 de diciembre de 2001, el peticionario presentó una *Moción en Solicitud de Sobreseimiento de la Denuncia al Amparo de la Regla*

---

[2] El TPI desestimó al amparo de dicha regla. Sin embargo, lo procedente era aplicar la Regla 64(n)(6), ya que el imputado se encontraba bajo fianza.

[3] *Véase* Apéndice, a la pág.54.

[4] *Véase* Apéndice, a la pág. 35.

[5] *Véase* Apéndice, a la pág. 37.

*247(b)*, en la cual alegó que la demora del Ministerio Público en presentar nuevamente la denuncia violó su derecho al debido proceso de ley y su derecho a juicio rápido. El TPI requirió al Ministerio Público que replicase a tales alegaciones.

Dicha parte compareció mediante moción de 13 de febrero de 2002, alegando que una vez desestimado un caso por delito grave bajo el palio de la Regla 64(n), *supra*, la Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap.II, R.67, permite la presentación de la denuncia nuevamente. De igual forma, expresó que no pudo presentar la nueva denuncia en una fecha anterior debido a que la testigo principal del caso, la víctima, no estuvo disponible por razones médicas.

Luego de atender los argumentos de las partes, el TPI declaró no ha lugar la solicitud de sobreseimiento, amparándose en lo dispuesto por la Regla 67 de Procedimiento Criminal, *supra*.[6] Ante tal decisión, el peticionario recurrió mediante *certiorari* al Tribunal de Circuito de Apelaciones (en adelante, "TCA"), foro que denegó el recurso.[7] Dicho tribunal concluyó que el derecho a juicio rápido no le asistía al peticionario

---

[6] Resolución del TPI, Sala Superior de Bayamón, de 26 de febrero de 2002. Esta decisión nada dispuso sobre la alegación de violación al derecho a juicio rápido. *Véase* Apéndice, a la pág. 26.

[7] Resolución de 31 de mayo de 2002, notificada el 11 de junio de ese año. *Véase* Apéndice, a las págs. 97-98.

durante el período de tiempo transcurrido entre la primera desestimación de la denuncia y la nueva radicación de ésta, toda vez que durante esa etapa el peticionario no estuvo sujeto a responder por cargo alguno.

Inconforme, el 31 de julio de 2002, el peticionario acudió ante este Tribunal y nos señaló dos errores, a saber:

> **PRIMER ERROR: Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que el peticionario de epígrafe no estaba sujeto a responder ("held to answer") y que por tanto, no le asistió el derecho constitucional a juicio rápido durante los trescientos cincuenta y siete (357) días que transcurrieron desde la desestimación de la denuncia en vista preliminar en virtud de la Regla 64(n) de Procedimiento Criminal y la presentación de una segunda denuncia por los mismos hechos al amparo de la Regla 67 del mismo cuerpo legal.**

> **SEGUNDO ERROR: Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que existió justa causa para la dilación de trescientos cincuenta y siete (357) días en que incurrió el Ministerio Público para resometer el caso en virtud de la Regla 67 de Procedimiento Criminal, al tomar en consideración nueva "evidencia" que aportó el Procurador General en el trámite apelativo la cual no obra en autos y que tampoco formó parte de las determinaciones de hechos y conclusiones de derecho del juez de instancia.**

Tras atender el recurso, mediante Resolución de 1 de agosto de 2002, concedimos al Procurador General un término de veinte (20) días para que mostrara causa por

la cual no debiéramos revisar la Resolución dictada por el TCA en el caso de marras. El Procurador compareció el 21 de agosto de 2002.

Contando con la comparecencia de las partes, resolvemos.

## II

El derecho a juicio rápido emana del Artículo II, sección 11 de nuestra Constitución, la cual dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público...."[8] A tenor de dicho mandato, la Regla 64(n) de Procedimiento Criminal, *supra*, establece unos términos razonables que rigen el alcance del referido precepto constitucional a lo largo de las distintas fases del procedimiento penal.

A pesar de tales términos, hemos interpretado el derecho a juicio rápido como uno cuyo contenido no está del todo determinado, y que es, en parte, variable y flexible. *Pueblo v. Valdés Medina*, res. el 4 de diciembre de 2001, 155 D.P.R. ____ 2001 T.S.P.R. 167, 2001 J.T.S. 170; *Pueblo v. Arcelay Galán*, 102 D.P.R. 409 (1974). Ello es así ya que, el concepto es uno relativo, que pretende salvaguardar tanto el orden público como la

---

[8] Esta disposición es similar a la de la Sexta Enmienda de la Constitución de Estados Unidos de América, que expresa: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." De hecho, hemos seguido la jurisprudencia del Tribunal Supremo Federal en cuanto a los propósitos e intereses protegidos por ella. *Véase e.g. Pueblo v. Miró González*, 133 D.P.R. 813 (1993).

libertad individual. Como expresáramos en una ocasión anterior, **"[el derecho a juicio rápido] garantiza los derechos del acusado, pero no excluye los derechos de la justicia pública**." *Pueblo v. González Rivera*, 132 D.P.R. 517 (1993)(énfasis suplido)[9]  En cuanto al interés público, se trata de evitar que una demora indebida haga más difícil para el Estado el procesamiento efectivo de los criminales, al dificultarse la prueba de los cargos más allá de duda razonable.[10]  Mientras que, por otra parte, se procura: 1) proteger al acusado contra una detención opresiva; 2) minimizar sus ansiedades y preocupaciones; y 3) reducir las posibilidades de que su defensa se afecte. *Pueblo v. Valdés Medina*, *supra*, a la pág.3.

---

[9] El Tribunal Supremo de Estados Unidos lo expresó de la siguiente manera:

> [i]n large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that "the right of a speedy trial is necessarily relative...It secures the rights to a defendant. It does not preclude the rights of public justice." *U.S. v. Ewell*, 383 U.S. 116, 120 (1966).

[10] *Véase* Gladys González Colón, *El Derecho a Juicio Rápido en el Procedimiento Criminal*, 48 Rev.Jur. U.P.R. 645 (1979).

De igual forma, reiteradamente hemos establecido que el derecho en cuestión se activa desde el momento en que el imputado está sujeto a responder ("held to answer"), ya sea porque fue arrestado o por que de alguna forma ***se pone en movimiento el mecanismo procesal que lo expone a una convicción***.[11] *Pueblo v. Valdés Medina*, *supra*, a la pág. 2; *Pueblo v. Miró González*, 133 D.P.R. 813, 818 (1993). Una vez el derecho cobra vigencia, la Regla 64(n) de Procedimiento Criminal, *supra*, provee para la desestimación de los cargos si el Ministerio Público no cumple con los distintos términos de rápido enjuiciamiento.

No obstante, dichos términos no son fatales, pudiendo extenderse los mismos bien sea por justa causa, por demora atribuible al acusado o si éste consiente a ella. Así pues, los tribunales evaluarán la razonabilidad de la dilación a base de cuatro (4) criterios, a saber: 1) duración de la tardanza; 2) razones para la dilación; 3) invocación oportuna del derecho; y 4) el perjuicio resultante de la tardanza. *Pueblo v. Candelaria Vargas*, 148 D.P.R. 591 (1999); *Pueblo v. Rivera Tirado*, 117 D.P.R. 419 (1986). Si a base de ese análisis el tribunal entiende que la tardanza no es justificada, procede la

---

[11] Esto puede ser desde el momento mismo en que un juez determina causa probable para arrestar, citar o detener a un ciudadano por la comisión de un delito imputado.

desestimación de los cargos al amparo de la Regla 64(n) de Procedimiento Criminal.[12]

Ahora bien, si los cargos que se desestiman son por delito grave, la Regla 67 de Procedimiento Criminal, *supra*, permite la iniciación de un nuevo proceso por los mismos hechos.

Sin embargo, ni la Regla 64(n) ni la Regla 67, *supra*, proveen un término preciso para que el Ministerio Público presente nuevamente los cargos desestimados.

Ante el silencio de las Reglas, procedemos a analizar el derecho vigente sobre juicio rápido para resolver si, aunque la normativa estatutaria no lo vislumbra, cabe aplicar tal derecho al peticionario en esa etapa de los procedimientos.

III

En el caso de autos, el peticionario alega que le asistía el derecho a juicio rápido durante el período

---

[12] En *Pueblo v. Montezuma Martínez*, 105 D.P.R. 710, 712 (1977), resolvimos que la desestimación por violación a los términos de rápido enjuiciamiento procede al amparo

continúa...

... [12] continuación

de la Regla 64(n) de Procedimiento Criminal, *supra*, y no por la Regla 247. La diferencia estriba en que bajo la primera, se permite la nueva radicación de cargos, mientras que bajo la segunda, la desestimación es con perjuicio a un nuevo proceso. Además, expresamos en dicha opinión que **presentados nuevamente los cargos**, otra dilación excesiva e injustificada podría vulnerar [el derecho a juicio rápido], procediendo el archivo definitivo de la causa. *Id.*, a la pág. 713 (énfasis suplido).

entre la primera desestimación de los cargos por violación a los términos de la Regla 64(n) de Procedimiento Criminal, *supra*, y la nueva presentación de los mismos al amparo de la Regla 67 del referido cuerpo legal. Es decir, el Sr. Carrión Rivera entiende que durante dicho lapso de tiempo se encontraba "sujeto a responder" criminalmente, por lo que la presentación de los mismos cargos un año después de la referida desestimación constituyó una dilación irrazonable que amerita que desestimemos con perjuicio al amparo de la Regla 247(b) de Procedimiento Criminal, 34 L.P.R.A. Ap.II, R. 247(b). No le asiste la razón.

Como expresáramos en la sección anterior, la protección constitucional a juicio rápido sólo se activa cuando se pone en movimiento el mecanismo procesal que **puede culminar en una convicción**, cuyo efecto legal es obligar a la persona imputada a responder por la comisión del delito que se le atribuye. *Pueblo v. Miró González*, *supra*, a la pág. 818 (énfasis suplido). De ello, podemos colegir que estar **"sujeto a responder" supone la presentación de cargos por parte del Ministerio Público**. En otras palabras, que ya pueda hablarse de un proceso judicial que requiera la comparecencia del imputado. A esos efectos, este Tribunal puntualizó hace aproximadamente cuatro décadas, mediante opinión emitida por el Juez Asociado señor Serrano Geyls, que:

> [s]e requiere terminantemente que la persona esté detenida para responder ("held to answer") o encarcelada ("committed") por orden de un magistrado para que comiencen a contar los términos que las leyes fijan para presentar la acusación...Luego de un examen exhaustivo no hemos podido hallar una sola disposición constitucional o de ley, ni una sola interpretación judicial que exijan comiencen a contarse los términos antes de tener lugar una de esas actuaciones oficiales. Por el contrario, ***la regla aceptada es que bajo ninguna circunstancia surge el derecho a juicio rápido antes de que exista un cargo o un arresto,*** aun cuando las autoridades responsables del procesamiento ("prosecuting authorities") hubiesen tenido conocimiento del delito mucho antes de esos actos. *Pueblo v. Tribunal Superior*, 81 D.P.R. 455, 468-469 (1959)(énfasis suplido).

En el presente caso, se determinó causa probable para arresto conforme a derecho. Igualmente, se programó celebrar la vista preliminar en varias ocasiones, pero ésta no pudo celebrarse dentro del término estatuido por la Regla 64(n)(6), *supra*. A consecuencia de ello, el Ministerio Público solicitó la desestimación de la denuncia, adviniendo ésta final y firme, y devolviéndosele al peticionario la fianza y los documentos personales que obraban en poder del Estado.

Ante estos hechos, debemos concluir que durante todo el primer proceso, desde el arresto hasta la solicitud de desestimación, el peticionario estuvo "sujeto a responder", toda vez que pesaba en su contra una denuncia por el delito de violación técnica. Dicha condición, sin

embargo, cambió con la desestimación de la denuncia. Esto es así debido a que la desestimación, aunque sin perjuicio, significó la caída de los cargos que pendían en su contra. Tan es así que el Ministerio Público tuvo que presentar cargos nuevamente por los mismos hechos. A esa nueva denuncia se le asignó un nuevo número de caso y, por haber solicitado el peticionario que se le cancelara la fianza anterior, se le fijó una nueva. Es con esa nueva presentación de cargos que el peticionario advino nuevamente a estar **expuesto a convicción**, y por ende "sujeto a responder."

Por tanto, no nos persuade el argumento del peticionario, en el sentido de que una primera desestimación sería solo una incidencia procesal que no interrumpe el carácter continuo del procedimiento. La desestimación de una causa tiene que entenderse como un evento que da por terminada la acción presentada ante los tribunales por el Ministerio Público. El hecho de que sea "sin perjuicio" no opera en contra de esta conclusión, ya que ello lo que significa es que el imputado no está "absuelto" para propósitos de la protección constitucional contra la doble exposición. Así pues, la desestimación "sin perjuicio" apunta a que el imputado no queda liberado de su responsabilidad penal, no a que éste se mantenga "sujeto a responder."

De este modo, ante la ausencia de cargos formales en contra del peticionario, éste no tenía que responder a nada. A lo único que estuvo sujeto el peticionario durante ese período fue a que, como en efecto ocurrió, el Ministerio Público decidiera re-procesarlo. Por lo que, para efectos prácticos, el peticionario se encontraba en la misma situación procesal que un individuo que sabe que está siendo investigado, pero que aún no se le han sometido cargos formalmente.

Sobre ese particular, hemos establecido consistente y claramente que, para fines del derecho a juicio rápido, una persona expuesta a ser arrestada o denunciada no está "sujeta a responder." En esa etapa procesal, al ciudadano lo ampara tanto el derecho al debido proceso de ley como los límites que fije el término prescriptivo del delito por el cual se le pretenda acusar, pero no el derecho a rápido enjuiciamiento. *Véase Pueblo v. Esquilín*, res. el 19 de octubre de 2000, 152 D.P.R. \_\_\_, 2000 T.S.P.R. 151, 2000 J.T.S. 164. En consecuencia, ***estar "sujeto a responder" significa encontrarse expuesto a ser convicto por unos cargos formalmente imputados, no siendo suficiente el estar expuesto a ser arrestado, denunciado o citado.***

El así resolver es consistente tanto con la jurisprudencia del Tribunal Supremo de Estados Unidos como con nuestros precedentes. Por ejemplo, en *U.S. v.*

*MacDonald*, 456 U.S. 1 (1982), el más alto foro federal concluyó que la garantía de juicio rápido no cubría el período transcurrido desde la desestimación de la primera acusación hasta la nueva presentación de cargos. Así pues, resolvió que MacDonald no estaba "sujeto a responder" a base del siguiente razonamiento:

> [t]he Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…" A literal reading of the Amendment suggests that this right attaches only when a formal criminal charge is instituted and a criminal prosecution begins.
> In *U.S. v. Marion*, 404 U.S. 307, 313 (1971), we held that the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise **officially accused....**
> ...
>
> Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment...or to a claim under the statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending.
>
> Similarily, **the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause** (énfasis suplido). *U.S. v. MacDonald*, *supra*, a las págs. 6-8.[13]

---

[13] A igual resultado, utilizando idéntico razonamiento, se llegó en *U.S. v. Loud Hawk*, 474 U.S. 302 (1986).

En cuanto a los precedentes de este Tribunal, en *Pueblo v. Reyes Herráns*, 105 D.P.R. 658 (1977), se nos planteó la controversia de si procedía aplicar el derecho a juicio rápido al período que transcurre entre la disolución de un jurado y la celebración de un nuevo juicio. En esa ocasión, luego de atender las disposiciones de la Regla 64(n), *supra*, resolvimos que dado que no existe un término en ley para la celebración de un nuevo juicio, no procedía aplicar las disposiciones de juicio rápido. *Id.*, a la pág. 661. Sin embargo, expresamos que el nuevo juicio debía celebrarse dentro de un término razonable. *Id.*

Igualmente, en *Pueblo v. Miró González*, *supra*, tuvimos la oportunidad de determinar si el derecho a juicio rápido se extendía al período entre la determinación de "no causa probable" para arrestar y la celebración de vista en alzada al amparo de la Regla 6(c) de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R.6(c). Resolvimos en esa oportunidad que no aplicaba el referido derecho constitucional a esa situación, toda vez que durante ese lapso el imputado no estaba "sujeto a responder," por no pesar formalmente algún cargo criminal en su contra. Nótese que tanto en *Reyes Herráns*, *supra*, como en *Miró González*, *supra*, aunque el imputado aún no se liberaba de responsabilidad penal, ello no incidió en

nuestra determinación de no extender el derecho a juicio rápido a las situaciones planteadas.

Finalmente, distinto a lo que sugiere el peticionario, a la controversia de autos no le aplica lo resuelto en *Pueblo v. Soto Ortiz*, res. el 29 de junio de 2000, 151 D.P.R. ___, 2000 T.S.P.R. 108, 2000 J.T.S. 119. En esa ocasión, la controversia medular ante nuestra consideración era si ante la desestimación de los cargos (delito grave) por violación a los términos de juicio rápido, la fianza previamente prestada subsistía en la eventualidad de que se presentaran cargos nuevamente por los mismos hechos, aunque el magistrado no haya hecho determinación alguna al respecto. Resolvimos dicha controversia en la afirmativa, fundamentando nuestra decisión en que, a pesar de que la desestimación en esa etapa conlleva la excarcelación del imputado, no tiene el efecto de liberar de responsabilidad criminal instantáneamente[14], por lo que se mantiene vigente la responsabilidad del fiador, sujeta al cumplimiento por el Ministerio Público con la normativa de las Reglas de Procedimiento Criminal.[15] *Pueblo v. Soto Ortiz*, *supra*, a la pág. 10. Sin embargo, condicionamos la subsistencia

---

[14] Como explicáramos anteriormente, "responsabilidad criminal" no es lo mismo que estar "sujeto a responder."

[15] *Véase además Pueblo v. Félix Avilés*, 128 D.P.R. 468 (1991); Olga Elena Resumil, *Derecho Procesal Penal*, 61 Rev. Jur. U.P.R. 835, 852-855 (1992).

de la primera fianza a que el imputado no solicitase su cancelación antes de la presentación de la nueva acusación o denuncia. *Pueblo v. Soto Ortiz*, *supra*, a la pág. 16.

Asimismo, apuntamos a la deseabilidad de que, ante situaciones como esa, los tribunales procedieran de acuerdo con la Regla 66 de Procedimiento Criminal, 34 L.P.R.A., Ap. II, R.66,[16] que le concede autoridad al juez sentenciador para delimitar el término específico en que el imputado permanecerá bajo custodia o que subsistirá la fianza prestada para dar lugar a que se presenten los cargos nuevamente. *Pueblo v. Soto Ortiz*, *supra*, a la pág.17. Expresamos, además, que transcurrido dicho término, el imputado puede solicitar la cancelación de la fianza, y el Tribunal podrá sobreseer la causa a tenor de

_____

[16] La Regla 66 de Procedimiento Criminal, *supra*, dispone que:

> Si la moción [de desestimación] se basare en defectos de la acusación, denuncia o pliego de especificaciones que pudiesen subsanarse mediante enmienda, el tribunal ordenará se haga la enmienda, y denegará la moción. Si el tribunal declarare con lugar una moción basada en defectos en la presentación o tramitación del proceso, o en la acusación o denuncia, ***podrá también ordenar que se mantenga al***

continúa...

...[16] continuación

> ***acusado bajo custodia, o que continúe bajo fianza por un término específico, sujeto a la presentación de una nueva acusación o denuncia....*** (énfasis suplido).

lo dispuesto por la Regla 247(b) de Procedimiento Criminal, *supra*. *Pueblo v. Soto Ortiz*, *supra*, a la pág.17.

No obstante, la presente controversia no solo presenta circunstancias diferentes[17] a las de *Soto Ortiz*, *supra*, sino que aun si interpretáramos como mandatorio lo que en aquella ocasión calificamos como "deseable" o "mejor práctica",[18] ello no cambiaría el resultado de nuestra decisión. Como estableciéramos en *Pueblo v. Ortiz Díaz*, 95 D.P.R. 244, 248 (1967), "**[e]sta Regla 66, a la luz de la 67 que permite la iniciación de otro proceso por el mismo delito cuando éste es grave, rechaza**

---

[17] Primeramente, la controversia medular de ese caso era fundamentalmente distinta a la de autos. Segundo, en ese caso la primera desestimación aún no había advenido final y firme. Tercero, distinto al caso que hoy nos ocupa, el imputado no había solicitado la cancelación de la fianza.

[18] A pesar de que como regla general, el invocar la Regla 66, *supra*, sea la mejor práctica, esto no revoca el lenguaje claro de la regla, que se refiere en términos potestativos, no mandatorios, a la facultad del juez para así obrar.

continúa...

... [18] continuación

Establecer una norma rígida que requiera que en **todo** caso el juez imponga un término máximo para presentar nuevamente los cargos desestimados, so pena de desestimación con perjuicio, sería obviar la realidad de que *cada caso tiene sus propias circunstancias*. Además, soslayaría el principio de que el derecho a juicio rápido es uno relativo, que busca salvaguardar tanto la libertad individual del acusado como el orden público. *Véase Pueblo v. González Rivera*, *supra*; *Pueblo v. Reyes Herráns*, *supra*.

*cualquier ataque bajo la Regla 64(n) a la acusación nuevamente radicada en este caso*...."

IV

Conforme a lo reseñado, resolvemos que la Regla 67 de Procedimiento Criminal, *supra*, le permite al Ministerio Público presentar nuevos cargos por los mismos hechos, constitutivos de delito grave, imputados al peticionario en un proceso anterior, pero desestimados por violación a los términos de rápido enjuiciamiento. Igualmente, que durante el período transcurrido entre la desestimación y la nueva presentación de cargos, éste no estuvo expuesto a convicción por delito alguno, por lo que no se encontraba "sujeto a responder." En consecuencia, al peticionario no le asistía el derecho constitucional a juicio rápido durante el referido período.[19] No obstante, al presentar los nuevos cargos, el Ministerio Público debió regirse por las limitaciones que le impone el término prescriptivo y el debido proceso de ley.

Si resolviéramos de otro modo, estaríamos subvirtiendo todo el régimen jurisprudencial sobre el que se desarrolla el derecho a juicio rápido. Esto es, estaríamos abriendo la puerta para establecer que en ciertas ocasiones el derecho aplica aunque el acusado no

---

[19] Por no asistirle al peticionario el derecho a juicio rápido en esta etapa de los procedimientos, resulta innecesario discutir el segundo error planteado por éste.

esté, propiamente, "sujeto a responder."  Cualquier cambio o enmienda sobre este particular le corresponde a la Rama Legislativa.

Se confirma la Resolución del TCA, y se devuelve el caso a instancia para que continúe los procesos de manera consistente con esta opinión.

Se dictará sentencia de conformidad.


BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                          CC-2002-588      Certiorari

Eduardo Carrión Rivera

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 4 de junio de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se confirma la Resolución del Tribunal de Circuito de Apelaciones, y se devuelve el caso al tribunal de primera instancia para que continúe los procesos de manera consistente con esta opinión.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Asociado señor Hernández Denton disiente con opinión escrita.

                          Patricia Otón Olivieri
                     Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.                              CC-2002-588

Eduardo Carrión Rivera

    Peticionario

Opinión Disidente emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 4 de junio de 2003.

En el presente recurso una mayoría de este Tribunal resuelve que el derecho a juicio rápido no cobija a un imputado durante el período de tiempo que transcurre entre una primera desestimación de la denuncia y la nueva radicación de los cargos por idénticos hechos un año más tarde. Por entender que el derecho a juicio rápido cobija a un imputado en tales circunstancias, disentimos.

I

El 8 de septiembre de 2000 se presentó una denuncia contra Eduardo Carrión Rivera por

infracción al Art. 99(a) del Código Penal, 33 L.P.R.A. sec. 4061(a), delito de violación, consistente en haber tenido acceso carnal con una menor de edad, sin que mediase violencia ni intimidación. Ese mismo día se encontró causa probable para su arresto y se le fijó una fianza de cinco mil dólares ($5,000), la cual prestó en el acto. La vista preliminar fue señalada para el 14 de septiembre de 2000, en cuya fecha el Ministerio Público compareció con la prueba de cargo. A solicitud de la defensa, la vista preliminar fue señalada para una fecha posterior. En el segundo señalamiento de la vista preliminar, el Ministerio Público informó al tribunal que necesitaba corroborar cierta información la cual podía ser exculpatoria, por lo que solicitó que la vista preliminar fuera suspendida nuevamente.

El tercer señalamiento de vista preliminar fue a su vez pospuesto por razón de que el representante del Ministerio Público a cargo del caso estaba enfermo, quedando ésta señalada para una fecha ulterior. Llegado el día de la vista, el 26 de diciembre de 2000, el Ministerio Público informó al tribunal que no estaba preparado y solicitó la desestimación de la denuncia al amparo de la Regla 64(n)(5)[20] de Procedimiento Criminal, 34 L.P.R.A. Ap. II R.64, por lo que el tribunal desestimó la denuncia sin perjuicio.

---

[20] Aunque el Tribunal de Primera Instancia desestimó la denuncia al amparo de dicha regla, lo que procedía era la Regla 64(n)(6) por estar el imputado bajo fianza.

El 3 de abril de 2001, tres (3) meses luego de la desestimación, el Tribunal de Primera Instancia declaró con lugar una solicitud de Carrión Rivera para que se ordenase a la Policía de Puerto Rico la devolución de los documentos, fotos y huellas digitales, por razón de que la denuncia había sido desestimada. Además, el 10 de agosto de 2001, siete meses luego de la desestimación, se devolvió al imputado la fianza según fuere solicitado.

Así las cosas, el 18 de diciembre de 2001, trescientos cincuenta y siete (357) días luego de haberse desestimado la acción, el Ministerio Público presentó una nueva denuncia contra Carrión Rivera por los mismos hechos imputados un año antes. En esta ocasión, se determinó nuevamente causa probable para el arresto y se fijó una fianza de mil dólares ($1,000), la cual el imputado prestó en el acto.

Varios días antes de la vista preliminar, Carrión Rivera presentó una moción en solicitud de sobreseimiento de la denuncia al amparo de la Regla 247(B), 34 L.P.R.A. Ap. II, R. 247, de las de Procedimiento Criminal, alegando que la demora de casi un año violaba su derecho al debido proceso de ley y su derecho a juicio rápido.[21] Por su parte el Ministerio Público, en representación del Estado, alegó

---

[21] Aunque la segunda solicitud de desestimación fue presentada al amparo del inciso (B) de la Regla 247 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, el vehículo adecuado y disponible para el acusado es la Regla 64(n) de dicho cuerpo legal.

que una vez desestimado un caso por delito grave bajo la Regla 64(n) de las de Procedimiento Criminal, *ante*, la Regla 67 del mismo cuerpo legal, 34 L.P.R.A. Ap. II, R.67, permite la presentación de la denuncia nuevamente. Señaló además, que la testigo principal del caso, la víctima, no estuvo disponible para testificar antes de dicha fecha por razones médicas, motivo por el cual no habían podido radicar la denuncia previo a ese momento.

Luego del análisis de rigor, el Tribunal de Primera Instancia denegó la solicitud de desestimación de la denuncia amparándose en la Regla 67 de Procedimiento Criminal, *ante*, la cual autoriza al Ministerio Público a radicar nuevamente la denuncia por idénticos hechos. Cabe mencionar que dicha Sentencia nada dispuso acerca del derecho a juicio rápido. Inconforme, Carrión Rivera acudió al Tribunal de Circuito de Apelaciones y señaló que había errado el Tribunal de Primera Instancia al declarar sin lugar su moción de desestimación.

Por su parte, el foro apelativo confirmó el dictamen del Tribunal de Primera Instancia tras concluir, en síntesis, que el derecho a juicio rápido no cobija el período de tiempo transcurrido entre una primera desestimación de los cargos y la nueva radicación de los mismos. Entendió dicho foro intermedio que la radicación de los cargos, un año más tarde, constituyó un proceso separado e independiente y  por consiguiente Carrión Rivera no se encontraba sujeto a responder por delito alguno luego

de la desestimación. Dicho foro sostuvo que el imputado no estaba sujeto a responder razón por la cual no le asistió el derecho a juicio rápido durante el período en controversia. Concluyó pues, el Tribunal de Circuito de Apelaciones, que no procedía la moción de desestimación presentada por el imputado.

De este dictamen recurrió Carrión Rivera ante nos y reprodujo sus planteamientos argumentando en esencia, que erró el Tribunal de Circuito de Apelaciones al decretar que se trataba de dos procesos judiciales independientes, y que él no estaba sujeto a responder durante el período de tiempo en controversia. Alegó en síntesis, que habiendo estado sujeto a responder durante el período de tiempo entre la primera desestimación y la nueva radicación de la denuncia, le ampara a éste el derecho constitucional a juicio rápido.

Examinado el recurso, le concedimos término al Procurador General para que compareciera y mostrara causa, si la hubiere, por la cual no debiéramos revocar el dictamen del foro apelativo. Luego del análisis de rigor, una mayoría de este Tribunal resolvió que el derecho a juicio rápido no cobija a un imputado durante el período de tiempo que transcurre entre una primera desestimación y la nueva radicación de los cargos un año más tarde. Por estimar que la mayoría de esta Curia erró al resolver de esta manera, disentimos.

II

La garantía constitucional del derecho a juicio rápido, proviene de la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, la cual provee, entre otras cosas, que;

En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido... (Énfasis suplido.)

Esta garantía constitucional persigue proteger los intereses del acusado para evitar su indebida y opresiva encarcelación antes del juicio; minimizar la ansiedad y preocupación que genera una acusación pública, y; reducir las posibilidades de que una dilación extensa menoscabe la capacidad del acusado para defenderse. *Véase*, Pueblo v. Rivera Tirado, 117 D.P.R. 419, (1986).

Debido a que existe un vigoroso interés social en evitar la demora en los casos criminales, y en miras a velar que este derecho se cumpla con el mayor escrutinio posible, dicho postulado constitucional fue codificado en la Regla 64(n) de las de Procedimiento Criminal, *ante*, la cual establece ciertos términos dentro de los cuales se deben llevar a cabo las diversas etapas del proceso adjudicativo.[22] Dichos lapsos sólo pueden extenderse por

---

[22] A modo de ejemplo, señalamos que el Estado tiene 30 días, desde que se arresta a la persona, para celebrarle la vista preliminar cuando ésta sea necesaria, 60 días si el individuo está libre bajo fianza. El Ministerio Público tendrá además 120 días desde la presentación de la acusación o denuncia para someter al imputado a juicio

justa causa, o por demora imputada al acusado o consentida por éste. De no poder el Ministerio Público demostrar alguna de las anteriores justificaciones para la dilación del proceso adjudicativo, procede la desestimación de la acción penal. Pueblo v. Rivera Tirado, *ante*.

No obstante, si el Ministerio Público presenta hechos que constituyen justa causa para la demora, el Tribunal procederá a adjudicar la validez de la dilación utilizando un análisis de balance de intereses en el que considerará los siguientes cuatro factores: (1) duración de la tardanza; (2) razones para la dilación; (3) si el acusado ha invocado oportunamente el derecho a juicio rápido; y (4) el perjuicio resultante de la tardanza. Cabe señalar que ninguno de estos criterios es determinante en la adjudicación del reclamo. El peso que a cada uno de estos se le confiera está supeditado a las demás circunstancias relevantes del caso que el tribunal viene obligado a examinar. *Véase*, Pueblo v. Rivera Tirado, *ante*.

Es menester señalar que la mera inobservancia del término estatuido, sin más, no necesariamente constituye una violación al derecho a juicio rápido ni conlleva la desestimación automática de la denuncia o la acusación. *Véase*, Pueblo v. Candelaria Vargas, res. el 18 de junio de 1999, 99 T.S.P.R 96. Una dilación mínima es requisito de umbral para que un planteamiento de violación a juicio

_____

cuando este se encuentre libre, y 60 cuando el acusado se encuentre sumariado.

rápido progrese. No obstante, el remedio extremo de la desestimación sólo debe concederse luego de efectuado un análisis ponderado de los criterios antes esbozados.

Cabe mencionar que la Regla 64(n) no estipula un término preciso para que se radiquen nuevamente los cargos luego de una desestimación por infracción a los términos de juicio rápido. Así pues, para la solución más cabal de la controversia de autos, es necesario tomar en consideración otras disposiciones de nuestro ordenamiento jurídico.

La Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.67, contempla el efecto de una moción de desestimación y dispone que la misma no será impedimento para la iniciación de otro proceso por el mismo delito, a menos que el defecto u objeción fuere insubsanable, o a menos que tratándose de un delito menos grave la desestimación haya sido declarada con lugar por alguno de los fundamentos relacionados a la Regla 64(n), *ante*.

De la Regla 67, *ante,* se desprende que en los casos en que esté envuelto un delito grave, la desestimación al amparo de la Regla 64(n), *ante,* no es óbice para que se reformulen cargos por los mismos hechos en una etapa posterior.

Por su parte, la Regla 66 de las de Procedimiento Criminal, 34 L.P.R.A. Ap.II R.66, establece que, decretada una desestimación por defectos en la presentación o tramitación del proceso, o en la acusación o denuncia, el magistrado podrá ordenar que se mantenga al imputado bajo

custodia o que continúe bajo fianza por un término específico, sujeto a la presentación de una nueva acusación o denuncia por los mismos hechos. Aplicando la referida regla a la desestimación por infracción al derecho a juicio rápido este Tribunal dispuso en Pueblo v. Soto Ortiz, res. el 29 de junio de 2000, 2000 T.S.P.R 108, que la mejor práctica al decretar una desestimación bajo imputaciones de delito grave al amparo de la Regla 64(n), *ante*, es que el magistrado haga una determinación sobre cuál será la condición procesal del imputado. De no disponerse nada sobre este particular, se entenderá que subsiste la condición existente, ya sea mantenerle bajo custodia,[23] o bajo libertad provisional, hasta que se presente nuevamente la denuncia. El magistrado deberá además delimitar el término específico de duración de la condición procesal del imputado, el cual servirá de límite para la presentación de la nueva denuncia.

En varias ocasiones este Tribunal ha tenido oportunidad de aclarar aspectos esenciales en torno a la aplicación de las reglas previamente esbozadas, y la aplicación de las mismas al derecho a juicio rápido. Así pues, hemos precisado que el derecho constitucional a juicio rápido no cobra vigencia hasta que el imputado es detenido o esté sujeto a responder por la comisión del delito ("held to answer"). Pueblo v. Rivera Colón, 119 D.P.R. 315, 321 (1987); Pueblo v. Rivera Tirado, *ante*. En

_____

[23] Siempre y cuando no se incumpla con el término máximo de detención preventiva.

virtud de lo antes expuesto, en Pueblo v. Miró González, 133 D.P.R. 813, (1993), afirmamos, que un ciudadano se encuentra sujeto a responder por la comisión de un delito, en el momento en que un juez determina causa probable para arrestar, citar o detener a dicho ciudadano por el delito inculpado. Ello, debido a que desde ese momento se pone en movimiento el mecanismo procesal que podría culminar en una convicción, y que tiene el efecto legal de obligar a esa persona a responder por la comisión de un delito público.[24]

Este Tribunal ha reiterado además, que el proceso judicial es uno íntegro y continuo, que comienza, como mencionáramos anteriormente, con la citación o la determinación de causa probable para el arresto, y culmina con la absolución, convicción o la desestimación con perjuicio de la denuncia o acusación. Pueblo v. Vallone, 133 D.P.R. 427 (1993); Pueblo v. Félix Avilés, 128 D.P.R. 468 (1991). Es por ello que en Pueblo v Ortiz Díaz, 95 D.P.R. 244 (1967), manifestamos que cuando se presentan nuevos cargos, al amparo de la Regla 67 de las de Procedimiento Criminal, ante, no se trata de una nueva acusación que contuviera cargos distintos o adicionales; más que de una nueva acusación, en su efecto legal se trata

---

[24] Cabe mencionar que este Tribunal resolvió que el derecho a juicio rápido no se extendía a la situación presentada en Pueblo v. Miró, ante. Sin embargo, contrario a la situación del caso de marras, al imputado en Miró, ante, **no** se le había encontrado causa probable para el arresto a tenor con la Regla 6 de Procedimiento Criminal, por lo que nunca estuvo "sujeto a responder". Es decir, contra dicho individuo no pesaba ningún cargo criminal, situación que no es análoga al imputado de autos.

aquí de la radicación *nuevamente* de la misma acusación. Por ende, en dicho caso resolvimos que a menos que la acusación no contenga cargos distintos o adicionales a los que se hacen en la acusación original, es innecesario e inoficioso que el tribunal vuelva a los procedimientos preliminares de determinación de causa probable al radicar nuevamente la acusación.

La Opinión mayoritaria sostiene que la desestimación de la denuncia del caso de autos puso fin a la acción penal. "Tan es así [sostiene dicha Opinión] que el Ministerio Público tuvo que presentar cargos nuevamente por los mismos hechos". Sin embargo, según nuestros pronunciamientos en Pueblo v. Ortiz Díaz, *ante*, luego de una primera desestimación, el Ministerio Público tiene la facultad de continuar con el caso desde la vista preliminar sin que sea necesario volver nuevamente sobre procedimientos preliminares de determinación de causa para el arresto. Es decir, en el caso de marras, contrario a lo expresado por una mayoría de este Tribunal, no era imperioso celebrar la vista de determinación de causa para el arresto a tenor con la Regla 6 de Procedimiento Criminal para que se continuara con el proceso penal. La facultad otorgada al Ministerio Público de retomar el caso en la misma etapa en la que previamente había cesado, sólo se sostiene si vislumbramos el proceso adjudicativo como un proceso continuo e íntegro que no concluye con esa primera desestimación. De otro modo no se justifica tal proceder.

Afín con dicha conclusión, recientemente en <u>Pueblo v</u> <u>Soto Ortiz</u>, *ante*, advertimos que el proceso adjudicativo <u>no</u> <u>concluye con una primera desestimación por motivo de</u> <u>haberse violado los términos de juicio rápido</u>, <u>sino que por</u> <u>el contrario,</u> **<u>dicho proceso continua mientras el imputado</u>** **<u>esté sujeto a la presentación de una nueva acusación o</u>** **<u>denuncia por idénticos hechos.</u>**

La jurisprudencia aquí reseñada y los artículos previamente mencionados, no sólo evidencian el carácter continuo del proceso judicial, sino que además son indicativos de que un imputado está sujeto a responder hasta que finalice en su totalidad dicho proceso adjudicativo.

En el caso de marras, la mayoría de este Tribunal sostiene que lo que le cobija a un imputado durante el período de tiempo entre la desestimación de los cargos y la nueva radicación de los mismos, es la protección bajo el debido proceso de ley, y no los postulados del derecho a juicio rápido. Dicha determinación se sustentó, en esencia, en la creencia de que la nueva radicación de la denuncia constituyó un proceso nuevo e independiente del primero. Sostiene la mayoría que, debido a que previo a la segunda radicación el imputado no se encontraba sujeto a responder por delito alguno, no le ampara a éste el derecho a juicio rápido. Esa determinación, a su vez se fundamentó en lo establecido en la jurisdicción federal en un caso con

circunstancias similares a la situación de autos. *Véase*, United States v. Mac Donald, 456 U.S. 1 (1982).

Sin embargo, anteriormente hemos recalcado que nuestra interpretación no está inexorablemente atada a las fuentes federales. Pueblo v. Arcelay, 102 D.P.R. 409 (1974). Además, reiteradamente hemos establecido, a diferencia de la doctrina federal, que nuestro proceso judicial es uno íntegro y continuo, donde el imputado se encuentra sujeto a responder durante todo el transcurso del proceso adjudicativo. Es por ello que una primera desestimación sería sólo una incidente procesal que no interrumpe el carácter continuo del procedimiento, y que no supone la pérdida del derecho a juicio rápido.

En resumidas cuentas, el derecho constitucional a juicio rápido en nuestra jurisdicción ampara a un imputado desde el instante en que comienza la acción penal contra éste. Esto a su vez, ocurre una vez se haya expedido contra él una orden de arresto o citación, y perdura durante todo el tiempo que el imputado esté sujeto a responder por dicho delito.

Por otro lado, en pos de sustentar su determinación de que lo que cobija a un individuo en esta situación es la protección del debido proceso de ley, la mayoría de esta Curia sostiene además, que un imputado cuya acción fuere desestimada por violación a los términos establecidos en la Regla 64(n), *ante*, se encuentra en igual situación que un ciudadano a quien el Ministerio Público aún no le ha

radicado cargos. Habida cuenta de que los objetivos primordiales del derecho a juicio rápido son minimizar la ansiedad y angustia que pueda sufrir un imputado que se enfrenta a un proceso judicial, y evitar, en cuanto sea posible, el perjuicio producido por un proceso dilatado, entendemos no le asiste la razón a la mayoría de este Tribunal.

En el caso de marras, el Ministerio Público tuvo oportunidad de preparar adecuadamente su investigación antes de someter al peticionario al proceso judicial. Es forzoso concluir que si el Ministerio Público sometió los cargos en contra del imputado fue porque tenía certeza de que existía suficiente evidencia como para salir airoso de dicho proceso. Como consecuencia de esa creencia, el peticionario fue denunciado públicamente, citado a una vista donde se determinó causa probable para el arresto y se le fijó una fianza, y fue citado a cuatro vistas adicionales para determinar la existencia de causa probable para acusarlo.

No puede haber duda de que la maquinaria procesal, en efecto, comenzó a correr contra el peticionario, estando éste sujeto a responder no sólo al escrutinio de las cortes sino al de su familia, sus pares y su comunidad en general. A tales efectos, el estado de ansiedad de ese imputado y el perjuicio sufrido por ese proceso, aún cuando el mismo haya sido desestimado, en nada se equiparan al de un ciudadano para quien el proceso judicial aún no ha comenzado, y quien

en ocasiones ni siquiera está enterado de que se le está llevando a cabo una investigación criminal.

La ansiedad que sufre un ciudadano al verse expuesto a un procedimiento penal no se desvanece cuando la denuncia es desestimada sin perjuicio. Por el contrario, ese imputado ya ha sido expuesto a un proceso judicial, tiene conocimiento de que el Ministerio Público posee suficiente evidencia para procesarlo, y ha sido sometido al riguroso escrutinio social al cual todo imputado de delito está sujeto. Decir que este individuo, quien ya estuvo expuesto al proceso judicial una primera vez, y que está a la expectativa de que el Ministerio Público decida cuándo radicará nuevamente la acción, está en igual situación que un ciudadano al cual no se le han imputado cargos, es obviar la diversidad fáctica de esas dos situaciones.

A la luz de la normativa examinada, pasemos a discutir la situación que tenemos ante nos.

III

La Opinión del Tribunal sostiene que luego de que la desestimación de la primera denuncia advino final y firme, y no habiéndose determinado nuevamente causa probable para arrestar, el peticionario no estaba "sujeto a responder" pues no estaba denunciado o acusado por delito alguno. Se señala además en dicha Opinión que la devolución de la fianza pone punto final al proceso penal, por lo que no le protege a Carrión Rivera derecho alguno a juicio rápido.

Nos vemos imposibilitados de avalar la posición de la mayoría a esos efectos. Veamos.

Carrión Rivera fue denunciado el 8 de septiembre de 2000, por alegadamente haber tenido acceso carnal con una menor de edad. Ese mismo día se encontró causa probable para su arresto y se le fijó una fianza de cinco mil dólares ($5,000), la cual prestó en el acto. Es desde ese momento que se inicia la acción penal, y por consiguiente, estando el peticionario sujeto a responder por el delito imputado desde que se encontró causa probable para su arresto, desde ese instante le cobija a Carrión Rivera el derecho a juicio rápido.

Luego de varios incidentes procesales, el 26 de diciembre del mismo año, se desestimó la acción contra Carrión Rivera por infracción a los términos de juicio rápido establecidos en la referida Regla 64(n) de las de Procedimiento Criminal. En ese momento, según lo dispuesto en la Regla 66 de las de Procedimiento Criminal, *ante*, el magistrado tenía la facultad de mantener al imputado bajo fianza por un término específico, y sujeto a la presentación de una nueva denuncia. **Es precisamente el hecho de que el individuo aún está sujeto a responder por el delito imputado, lo que le permite a un magistrado retenerlo bajo fianza o incluso bajo custodia, <u>aún cuando la acción contra éste haya sido previamente desestimada</u>. De no estar el imputado sujeto a responder por el delito imputado, sería difícil justificar tal autoridad.**

Lo que procedía en al caso de autos, a tenor con la mejor práctica forense y según lo decretado por este Tribunal en Pueblo v. Soto Ortiz, *ante,* en cuanto a la referida Regla 66, era una determinación por parte del magistrado sobre la condición procesal de Carrión Rivera, y la designación de una fecha límite para la presentación de la nueva denuncia. Transcurrido ese término, el imputado podía solicitar la cancelación de la fianza, y si el Ministerio Público no había actuado el tribunal podía decretar el sobreseimiento de la acción con perjuicio, a tenor con la Regla 247(b) de las de Procedimiento Criminal, *ante*.

En Pueblo v. Soto Ortiz, *ante*, decretamos, que de no utilizar el fiscal la Regla 66, *ante*, tal y como sucedió en el caso de marras, subsiste la fianza previamente determinada, bajo los mismos términos y condiciones antes expuestos. Claro está, dicha fianza subsiste en su estado original, a menos que el imputado solicite su cancelación antes de que se presente la nueva acusación o denuncia.

El caso de autos se distingue de Pueblo v. Soto Ortiz*, ante,* precisamente porque el peticionario del presente recurso solicitó la cancelación de la fianza antes de que se radicara nuevamente la denuncia por los mismos hechos delictivos. Ello, según la mayoría, puso fin a la acción penal.

Sin embargo, el que un imputado pueda solicitar la cancelación de la fianza antes de que se presente

nuevamente la denuncia, no tiene el efecto de minimizar la conclusión que hiciéramos previamente al señalar que el proceso judicial es uno íntegro y continuo donde el imputado se encuentra sujeto a responder hasta que culmine la acción penal. Ello, debido a que la devolución de la fianza no tiene el efecto de finalizar el proceso penal. Sabido es que un proceso judicial subsiste hasta que se decrete la absolución o convicción del acusado, o hasta que el Estado por motivos procesales, como lo sería una desestimación con perjuicio, esté impedido de continuar el mismo. La fianza sólo garantiza la comparecencia del imputado a las diversas etapas del procedimiento judicial y no la existencia o no de dicho proceso. Así pues, la cancelación de la fianza no es impedimento para que siga el procedimiento contra el acusado. Más aún, el hecho de que la fianza haya sido cancelada no evita los perjuicios que el derecho a juicio rápido procura salvaguardar. Estos son, en esencia, proteger al acusado de una demora injustificada que pueda lesionar su defensa, y minimizar la ansiedad que puede acarrear el estar envuelto en un proceso criminal.

Así pues, entendemos que mientras el Ministerio Público tenga la autoridad de continuar el proceso adjudicativo, según lo autoriza la Regla 67 de las de Procedimiento Criminal, *ante*, la desestimación por la Regla 64(n) del mismo cuerpo legal, no constituye el fin de dicho proceso, sino meramente la conclusión de una de las etapas de este procedimiento.

Por consiguiente, estimamos que estando el imputado sujeto a responder desde la primera determinación de causa para el arresto, le asiste a éste el derecho a juicio rápido durante todo el transcurso procesal, incluyendo el período de tiempo entre una desestimación por inobservancia a los términos de juicio rápido, y la segunda radicación de los cargos por idénticos hechos.

Previamente señalamos que la mera inobservancia de los términos de juicio rápido, sin más, no necesariamente constituye una violación al derecho a juicio rápido, ni conlleva la desestimación automática de la denuncia o acusación. Pueblo v. Candelaria Vargas, ante. Así pues, devolveríamos el caso para que el Tribunal de Primera Instancia determine, haciendo un balance de intereses sobre los cuatro factores antes esbozados, si en el caso de autos se vulneró el derecho del imputado a un juicio rápido por haber el Ministerio Público demorado casi un año en radicar nuevamente la denuncia contra Carrión Rivera.

Debido a que una mayoría de este Tribunal resuelve de otro modo, disentimos.


                        FEDERICO HERNÁNDEZ DENTON
                              Juez Asociado