People v Spadaccino (2024 NY Slip Op 24045)

[*1]

People v Spadaccino

2024 NY Slip Op 24045

Decided on February 20, 2024

Justice Court Of The Town Of Webster, Monroe County

DiSalvo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 20, 2024
Justice Court of the Town of Webster, Monroe County

The People of the State of New York

against
John A. Spadaccino, Defendant.

Case No. 23070087

Sandra Doorley, District Attorney, Monroe County (Elizabeth D. Buckley and Kirby W. Leggett [awaiting admission] of Counsel), for plaintiff. 
Julie Cianca, Monroe County Public Defender (Sara Gaylon of Counsel), for defendant.

Thomas J. DiSalvo, J.

History of the Case
The defendant was charged with stalking in the 3rd degree, PL. § 120.50 (3), a class A misdemeanor. It was alleged in the information that the defendant, who lives is Florida, was infatuated with the complainant. That during the time between July 2, 2023 and July 5, 2023 the defendant came to the Village of Webster where he contacted said complainant in person by showing up at her home, leaving a letter and flowers on her car, leaving a subsequent letter on her car, texting her, instant messaging her, phoning her and sending her messages through facebook. The complainant advised in her supporting deposition that she made it clear to him that she did not want to have a relationship with him. Furthermore, during the course of these contacts by the defendant, the complainant called 911, to seek assistance from the Webster Police.The police advised the defendant to cease and desist contacting the said complainant. However on July 8, 2023 the defendant contacted 911 to request a welfare check on the complainant. Whereupon, Officer Frate of the Webster Police Department arrived at the home of the complainant for said welfare check. At that time that Officer was advised of the situation and was shown 11 missed calls from the said defendant. It was at that time that the complainant requested the arrest of the defendant and that a stay away order of protection be issued.
On July 11, 2023 this court issued an Arrest Warrant for the defendant. The defendant was arrested by Webster Police on July 22, 2023.He was arraigned in Webster Court at an off hours arraignment at 8:55 P.M., where he was represented by an assistant public defender. He was released on his own recognizance and a stay away order of protection was issued in favor of the complainant. The matter was adjourned to August 30, 2023 for further proceedings. However, the defendant failed to appear.The matter was then adjourned to September 6, 2023 for the appearance of the defendant. At that time the defendant was offered a plea deal by the assistant district attorney, which would have allowed the defendant to plead to stalking in the 4th degree, a class B misdemeanor, with sentence promise of one (1) year probation. The matter was then adjourned to October 18, 2023 to give the defendant an opportunity to discuss said offer with his attorney. On October 18, 2023 defense counsel advised the court that the defendant was rejecting said offer and was requesting a bench trial. The defendant then executed a written jury trial waiver, [*2]and the case was set down for a bench trial on January 12, 2024. On November 8, 2023 the People filed with the court a Discovery Disclosure Letter/Certificate of Compliance/Statement of Readiness. However, on January 5, 2024 defense counsel filed a motion to strike the prosecution's Certificate of Readiness, pursuant to CPL § 245.50 (3) and (4), and to dismiss the accusatory instrument on speedy trial grounds, pursuant to CPL §§ 30.30 and 170.30 (1) (e). As a result the trial was cancelled. The case was adjourned to February 21, 2024 for argument of motions. In the meantime, the People then filed a Supplemental Certificate of Compliance, pursuant to CPL §§ 245.50 (1) and CPL 245.60/Certification of Counts, pursuant to CPL 30.30(5-a)/Statement of Readiness on February 12, 2024. On that date the People also filed a Notice of Motion and Responding Affirmation. Subsequently, the defense submitted a supplemental letter brief, dated February 14, 2024.

Issues Presented
Was the Certificate of Compliance filed by the People proper as required by CPL §§ 245.50 (1) and 245.50 (3)?
Should the accusatory instrument be dismissed on speedy trial grounds pursuant to CPL §§ 30.30 (1) (b) and 170.30 (1) (e)? 

 Facts and Legal Analysis.
Certificate of Compliance. The first alleged defect in the People's Certificate of Compliance is that the People failed to turn over all police reports generated by Webster Police as result of police contacts with the complainant herein, to wit: Webster Police Reports 23-015035, 23-015039, 23-015229, and 23-015303. Said police reports were referred to in Officer Frate's Field Case Report, dated July 10, 2023. In addition, defense counsel states that the prosecution failed to disclose "all electronic recordings of 911 telephone calls made or received in connection with this offense as required byCPL § 245.20 (1) (g)". Specifically, the defense indicates that it was not provided with the recordings of July 2, 2023 from the complainant to 911, of July 4, 2023 from the complainant to the Police and of July 5, 2023 from the complainant to the police. Under Paragraph 8 of the Certificate of Compliance entitled "CPL 245.20 (1) (g) TAPES AND OTHER ELECTRONIC RECORDINGS" the prosecution checked the box that states "That the People have provided 911 telephone calls".As a result of these two deficiencies the defense argues that that the November 8, 2023 Certificate of Compliance was improper and illusory.
CPL § 245.20 (1) (e) requires the the People's to turn over
"All statements, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including all police reports, notes of police and other investigators, and law enforcement agency reports. This provision also includes statements, written or recorded or summarized in any writing or recording, by persons to be called as witnesses at pre-trial hearings."
In fact, CPL § 245.10 (1) (a) (ii) requires that "When the defendant is not in custody during the pendency of the criminal case the prosecution shall perform its initial discovery obligations within thirty-five calendar days after the defendant's arraignment on an indictment, superior court information, prosecutor's information, information, simplified information, misdemeanor complaint or felony complaint." The People's Certificate of Compliance dated November 5, 2023 states in Section A "INITIAL DISCOVERY" in pertinent part that they have provided to the defense "all known items or information in the People's actual possession, custody or control that relate to the subject matter of the case." It must be noted that "... all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution."[FN1]

Police Reports. The People were notified of the missing discovery on January 5, 2024. As previously indicated the bench trial that was scheduled for January 12, 2024 was cancelled to allow the People to look into the situation and to provide the discovery material in question. On February 13, 2024 the People filed a Supplemental Certificate of Compliance. Said Supplemental Certificate of Compliance confirmed that only police report number CR 23-015229 and the additional 911 recordings have now been turned over to defense counsel. 
However, the People now say in their response affirmation that police reports numbered 23- 015035, 23-015039 and 23-015303 do not exist.[FN2]
The prosecutor advises in the Supplemental Certificate of Compliance that "The disclosure of the police report under 21-015229 was delayed because it was not directly searchable under this incident, which is CR 23-015602-WEB.[FN3]
Because it required additional due diligence, it was delayed." Nevertheless, the unaccounted for "CR" numbers were set out in Webster Police Department Field Case Report. The first paragraph of that report states
"On the above date and time patrol responded to the above location for the check welfare. Upon arrival patrol met with (V) ..., who advised that she was fine and that (S) John was stalking her and has made several different records about this. See CR's 23-015035, 23-015039, 23-015229, and 23-015303 for further. [sic]"
911 Recordings. As to the 911 recordings the prosecutor states in the Supplemental Certificate of Compliance that "These items were lost because they did not appear under this incident number and needed further due diligence to be recovered."He reiterates that allegation in his affirmation where he stated as follows: 
"The People did not have access to the 911 calls because they were lost. Wayne Hausberg from the Monroe County 911 Discovery Team initially searched for 911 calls under the original Crime Report Number and could not find all of the 911 calls. These 911 calls were then able to be recovered on January 12, 2024 by searching for the victim's address and phone number. ... This evidence was then disclosed to Defendant on February 11, 2024."
Due Diligence. The defense relies on CPL § 245.50 (3) arguing that "... if the court concludes that even a single item or single piece of information was not disclosed (other than lost/destroyed or protected items), the court is duty-bound to declare the certificate of compliance invalid, absent an individualized finding of special circumstances." 
CPL 245.50 (3) states as follows:
"Trial readiness. Notwithstanding the provisions of any other law, absent an individualized finding of special circumstances in the instant case by the court before which the charge is pending, the prosecution shall not be deemed ready for trial for purposes of section 30.30 of this chapter until it has filed a proper certificate pursuant to subdivision one of this section. A court may deem the prosecution ready for trial pursuant to section 30.30 of this chapter where information that might be considered discoverable under this article cannot be disclosed because it has been lost, destroyed, or otherwise unavailable as provided by paragraph (b) of subdivision one of section 245.80 of this article, despite diligent and good faith efforts, reasonable under the circumstances. Provided, however, that the court may grant a remedy or sanction for a discovery violation as provided by section 245.80 of this article."
Furthermore, CPL § 245.50 (1) states in pertinent part "The certificate of compliance shall state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery. It shall also identify the items provided." This then begs the question as to what constitutes "due diligence and making reasonable inquires" to obtain discoverable material? CPL § 245.20 (2) states in pertinent part "The prosecutor shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control" The court will have make separate determinations of due diligence relative to the police reports and the 911 calls. 
Article 245 does not define the term "due diligence". Nevertheless, it has been defined by the Court of Appeals in a recent decision as "a familiar and flexible standard that requires the People 'to make reasonable efforts' to comply with statutory directives". (People v. Bay, — NY3d —, 2023 NY Slip Op. 06407 *5)The court went on to state that
"Black's Law Dictionary is in accord; it defines 'due diligence' as '[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a [*3]legal requirement or to discharge an obligation' (Black's Law Dictionary 573 [11th ed 2019]). Reasonableness, then, is the touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries' (CPL 245.50[1])."[FN4]
The concept of due diligence is determined on a somewhat subjective level.[FN5]
The Court went on to hold that "An analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented...."[FN6]
Despite the fact that the perfection is not required of a prosecutor, good faith on the part of the prosecutor in obtaining and providing discovery is not enough.[FN7]

In this case the "NARRATIVE" of the Webster Police Department Field Case Report, which was prepared by Officer Tessa Frate on July 8, 2023 specifically refers to four specific police reports previously listed to wit: CR's 23-015035, 23-015039, 23-015229, and 23-015303. The Supplemental Certificate of Readiness filed on February 12, 2024 indicates that only 23-015229 has now been provided to the defense. The prosecutor advises that said report was obtained as result of a second Law Enforcement Records Management Search [LERMS].He further advises that said report "... was under different case number and needed to be uncovered through a LERMS record search". Furthermore, it is the position of the People that "In sum, police reports from Webster Police Department under : CR's 23-015035, 23-015039, and 23-015303 do not exist." That opinion is based on an email, dated January 12, 2024 from Officer Frate, who when asked if those reports existed stated "I am not sure." Nevertheless, it seems incredible that specific report numbers set out in the Webster Police Field Case Report do not correspond to any actual report. It is more likely that said reports were misplaced, i.e. lost, and as a result never put into the LERMS system. 
CPL § 245.50 (1-a) states in pertinent part "The filing of a supplemental certificate of compliance shall not impact the validity of the original certificate of compliance if filed in good faith and after exercising due diligence pursuant to section 245.20 of this article, or if the additional discovery did not exist at the time of the filing of the original certificate of compliance." Thus there is a two prong test for the validity of a Supplemental Certificate of Compliance. The prosecution must establish both a "good faith" effort and "due diligence" in obtaining the discovery material.There is no lack of good faith on the part of the prosecutor. However, since the police report numbers were known from the beginning, it seems unlikely that the police report numbers in question did not belong to an actual report. The existence of those [*4]reports should have been explored as part of the initial discovery. Nevertheless, assuming arguendo that reports 23-015035, 23-015039, and 23-015303 were misplaced or accidently destroyed, police report 23-015229 was available, but was not provided to the defense untill January 12, 2024 via the People's discovery portal. The failure to provide said police report prior to that date evidences a failure to establish the required due diligence. 
CPL § 245.80 (1) (b) governs lost or destroyed discoverable material. Said section permits the court to "impose an appropriate remedy or sanction" and "which is proportionate to the potential ways in which the lost or destroyed material reasonably could have been helpful to the party entitled to disclosure". However, said subsection is moot based on the court's ruling that due diligence was not established relative to providing police report 23-015229 to the defense.
In addition, it would seem reasonable that the when the initial search for the 911 recordings under the crime report number failed, a search under the victim's address and phone number would have been conducted. Failure to do so fails the due diligence test on the part of the People.
CPL § 245.50 states "Any supplemental certificate of compliance shall detail the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance."In this case the People failed to demonstrate through the supplemental certificate of compliance the required due diligence in not providing the police reports and 911 call recordings in the initial discovery package. Thus the People's certificate of compliance filed with the court on November 8, 2023 was illusory.
Speedy Trial. CPL § 3030 (5) states in pertinent part "Any statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of section 245.20 of this chapter...." The certificate of compliance filed herein on November 8, 2023 has been declared illusory for the reasons set forth herein. The People must be ready for trial on this matter within 90 days of commencement of this criminal action pursuant to CPL § 30.30 (1) (b). 

In this case the accusatory instruments were dated Sunday, July 9, 2023. Thus they would have been filed with the court on Monday July 10, 2023. That would be the date of commencement.[FN8]
The defendant was arraigned on July 22, 2023. That is a total of 12 days chargeable to the People. At that time the case was adjourned to August 30, 2023. That adjournment was at the specific consent of the assistant pubic defender at the arraignment. Thus the ensuing 39 days were not chargeable to the People. On August 30, 2023 the defendant failed to appear, so the case was adjourned to September 6, 2023. None of that time is chargeable to the People.On September 6, 2033 the case was adjourned to October 18, 2023 at the request of the defense so the matter could be screened for a plea offer. So none of that time was chargeable to the People. A plea offer was tendered by the People at that time, but was rejected by the defense. This the matter was adjourned to January 12, 2024 for a bench trial. The People announced their readiness for trial on November 8, 2023.The period from October 18, [*5]through November 8, 2024 is 21 days, which are chargeable to the People. Thus to that date a total of 33 days were chargeable to the People However, the Certificate of Compliance has been determined to be illusory for the reasons set forth herein. Therefore the time from November 8, 2023 through January 12, 2024, which was the date of the subsequently cancelled bench trial, is a total of 65 days. That would bring the total number of days to chargeable to the People as of January 12, 2024 to be 98 days.
"CPL 30.30(5), which became effective on January 1, 2020, and requires that '[a]ny statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of [CPL] section 245.20, does not warrant a contrary result. The new statute does not affect the applicability of the exclusions contained in CPL 30.30(4) (see People v Reynoso, 73 Misc 3d 148[A], 2022 NY Slip Op 50002[U] [App Term, 1st Dept 2022]; People v Brown, 73 Misc 3d 131[A], 2021 NY Slip Op 50965[U][App Term, 1st Dept 2021], lv denied 37 NY3d 1145 [2021]; People v Freeman, 71 Misc 3d 138[A], 2021 NY Slip Op 50470[U] [App Term, 1st Dept 2021], appeal withdrawn 37 NY3d 1027 [2021]; People v Jaquez, 71 Misc 3d 1110 [Sup Ct, NY County 2021]), including the excludability of post-readiness adjournments (beyond the specific period requested by the People) occasioned by the unavailability of the court due to court congestion (see People v Figueroa, 15 AD3d 914 [2005])."
(People v. Duffus, 74 Misc 3d 133 [A] *1-2)

Conclusion
The defendant's motion to declare the Certificate of Compliance filed with the Court on November 8, 2023 to be invalid is hereby granted.In addition, the defendant's motion to dismiss the accusatory herein, charging the defendant with stalking in the 3rd degree, on speedy trial grounds pursuant to CPL §§ 30.30 (1) (b) and 170..30 (1) (e) is hereby granted.[FN9]
As a [*6]result of that dismissal, the Order of Protection issued on July 22, 2023 is vacated. This constitutes the decision and order of this court.
Dated: February 20, 2024
Hon. Thomas J. DiSalvo
Webster Town Justice

Footnotes

Footnote 1:(CPL § 245.20 [2])

Footnote 2:(The People's Responding Affirmation states as follows: "The People have conducted an extensive due diligence search to find these reports from the Webster Police Department. In sum, police reports from Webster Police Department under Crs 23-015035, 23-015039, and 23-015303 do not exist. If Webster Police Department did have these records, then the People would have uncovered them from the LERMS system.")

Footnote 3:(CR # 23-015602 is the number assigned to the accusatory instruments herein.)

Footnote 4:(Id.)

Footnote 5:(The term subjective has been defined as "of, relating to, or belonging to a single person [even seemingly unbiased judges are influenced by their own subjective assumptions of the law]" Merriam-Webster's Collegiate Thesaurus 1017 [2nd Edition 2019])

Footnote 6:(Id. at *6)

Footnote 7:(Id.)

Footnote 8:("A criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court, and, if more than one accusatory instrument is filed in the course of the action, it commences when the first of such instruments is filed." CPL § 1.20 [17])

Footnote 9:(It should be noted that CPL § 30.30 [5], which connects the right to a speedy trial with the prompt discovery periods of Article 245, appears to be a tremendous departure from the way the right to a speedy trial was traditionally viewed. The main reason for the right to a speedy trial as set out in the Sixth Amendment to the United States Constitution is to prohibit the situation wherein a defendant remains in custody for a long period of time awaiting trial. This concept was set out in a dissenting opinion by Justice Clarence Thomas concurred in by Justice Antonin Scalia and Justice William Rehnquist in Doggett v. U.S., 505 U.S. 647, 112 S.Ct 2686, 120 L. Ed. 2d 520 (1992). In that dissenting opinion Justice Thomas stated:
"As we have explained, "the Speedy Trial Clause's core concern is impairment of liberty. 'United States v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648, 654, 88 L.Ed.2d 640 (1986) (emphasis added). Whenever a criminal trial takes place long after the events at issue, the defendant may be prejudiced in any number of ways. But '[t]he Speedy Trial Clause does not purport to protect a defendant from all effects flowing from a delay before trial.' Id., at 311, 106 S.Ct., at 654. The Clause is directed not generally against delay-related prejudice, but against delay-related prejudice to a defendant's liberty. 'The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.' United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Thus, "when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." Loud Hawk, supra, 474 U.S., at 312, 106 S.Ct., at 654." Id. at 660-661, 2695)

Finally, when the statutory law requires that cases be decided not on their merits nor on issues of constitutional protections, but on hyper technical and rigid standards for providing discovery, without regard to any prejudice suffered by the defendant, respect for the legal system is not augmented, but is diminished in the eyes of the People it is meant to serve.)